**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0604n.06

Case No. 20-5289

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Oct 26, 2020 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| JEFFREY DESMOND CARTER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: McKEAGUE, THAPAR, and LARSEN, Circuit Judges.

THAPAR, Circuit Judge. Jeffrey Carter appeals from a jury verdict convicting him of child sex trafficking and various child-pornography crimes. We affirm.

I.

Jeffrey Carter used a fake Facebook account to solicit pornographic images and videos of teenage girls. After one of the girls' fathers reported the crime, law enforcement traced the account to an IP address registered to Carter at his residence—the rear apartment of 1705 Miller Avenue in Murray, Kentucky.

Detective Michael Robinson applied for a warrant to search the electronic devices at the apartment and on Carter's person. His affidavit says that the relevant IP address was "in use by Jeffrey Carter at 1705 Miller Avenue rear Apartment in Murray." R. 77-4, Pg. ID 611; R. 77, Pg.

ID 593. The resulting warrant expressly incorporated that affidavit, but it described the place only as "1705 Miller Avenue"—a "tan brick single story structure with white trim." R. 77-4, Pg. ID 608; *see also id.* (referring to the "affidavit attached hereto and made a part hereof as if fully set forth herein").

Warrant in hand, Robinson led several officers to Carter's apartment. Carter answered the door, and the police searched his place. They seized his laptop, his cell phones, and a USB stick. The devices contained pornographic images and videos of young girls. Some showed Carter abusing the girls himself. The government charged him with child sex trafficking, receiving child pornography, and producing child pornography.

Carter moved to suppress this evidence. He said that the search warrant violated the Fourth Amendment because it failed to "particularly describ[e] the place to be searched" (his apartment). The district court denied the motion, and the case went to trial. A jury convicted Carter on all counts.

## II.

The Fourth Amendment requires that warrants "particularly describ[e] the place to be searched." U.S. Const. amend. IV. A warrant to search a location with multiple living units should identify which unit police are supposed to search. *United States v. Crumpton*, 824 F.3d 593, 614 (6th Cir. 2016).

But a "less than complete" (or even inaccurate) description on the face of the warrant does not doom the search. *United States v. Gahagan*, 865 F.2d 1490, 1498 (6th Cir. 1989); *Crumpton*, 824 F.3d at 612 ("[T]he issue is whether the description is sufficient, not whether it is perfect."). The warrant must have enough detail for an officer to find the place with reasonable effort. *Crumpton*, 824 F.3d at 612. But if it does, an inaccurate description will not invalidate the warrant

unless the inaccuracies created a "reasonable probability that some other premises [might] be mistakenly searched." *Id.* (citation omitted). And courts can sometimes look beyond the face of the warrant when conducting this analysis—if a warrant incorporates a supporting affidavit, a court may also consider the information in the affidavit. *See id.*; *Sanders v. Parrish*, 141 F. App'x 412, 415–16 (6th Cir. 2005); *see also Groh v. Ramirez*, 540 U.S. 551, 557–58 (2004). So the search warrant is not invalid for lack of particularity unless it and the affidavit (to the extent incorporated by the warrant) created a risk that the officers would search the wrong apartment.

The search of Carter's apartment did not violate the Fourth Amendment. The warrant explicitly incorporated Robinson's affidavit. And the affidavit, in turn, linked the relevant IP address to the *rear apartment* of 1705 Miller Avenue. The officers had no trouble finding Carter's apartment, and there was little chance they would have searched the wrong place—the detective who wrote the affidavit also executed the search. Thus, the warrant and the affidavit it incorporated described the place to be searched with enough particularity to satisfy the Fourth Amendment.[*]

Carter's reliance on *Groh v. Ramirez* is not persuasive. The search warrant in that case was "so obviously deficient" that it resulted in an essentially warrantless search: It did not describe the items to be seized "*at all*," nor did it incorporate any document that did. 540 U.S. at 557–58. As the Court explained, that warrant did not "simply omit a few items from a list of many to be seized, or misdescribe a few of several items." *Id.* The total omission, not mitigated by the incorporation of any supporting documents, invalidated the warrant for lack of particularity. The warrant to search Carter's apartment did not suffer from the same flaws. Its description of the

---

[*] To be sure, the affidavit did not "accompan[y] the warrant" to the search. *See Groh*, 540 U.S. at 557–58 (noting that in most circuits, a court may "construe a warrant with reference to a supporting . . . affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant"). But we have rejected a categorical rule that an incorporated affidavit must accompany the warrant to the search. *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms*, 452 F.3d 433, 443 (6th Cir. 2006).

place to be searched was incomplete but not absent, and it explicitly incorporated an affidavit that supplied the missing detail.

      We affirm.